UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH J. BOLDEN, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:04CV688 JCH |
| | ) | |
| STEVE EISENBATH, | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment, filed July 6, 2005. (Doc. No. 26). The matter is fully briefed and ready for disposition.

## BACKGROUND

By way of background, Defendant Steve Eisenbath ("Defendant" or "Eisenbath") alleges on the morning of June 16, 2003, a St. Charles City Police dispatcher was contacted by a probation officer in Montgomery County, Missouri, who informed the dispatcher that a probation violation had been issued for Justin W. Madsen ("Madsen"). (Defendant's Statement of Uncontroverted Material Facts ("Defendant's Facts"), ¶ 12, citing Eisenbath Dep. (Exh. H), PP. 8, 13-17). According to Defendant, Madsen was a fugitive from Montgomery County, charged with felony auto theft and believed to be residing in St. Charles County, Missouri. (Id.).

At approximately 8:55 a.m. on the morning of June 16, 2003, Eisenbath, a St. Charles City Police Officer, received a radio dispatch from St. Charles City Police Headquarters, directing him to locate and arrest Madsen at the Salvation Army Shelter ("Shelter") in St. Charles. (Defendant's Facts, ¶ 13, citing Dispatch Report (Exh. I); Eisenbath Law Enforcement Offense/Incident Report and Continuation Form (Exh. J); Exh. H, PP. 8, 13-17). During the dispatch, Eisenbath was notified

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

that an active warrant for Madsen's arrest existed. (Id., ¶ 14, citing Exh. H, PP. 14-16; Arrest Warrant Posting for Madsen (Exh. K)).

Upon arriving at the Shelter, Eisenbath encountered Plaintiff Deborah J. Bolden ("Plaintiff" or "Bolden"), the Director of the Shelter, near her office on the first floor of the facility. (Defendant's Facts, ¶ 15, citing Exh. H, PP. 17-19; Exh. J, P. 3; Bolden Dep. (Exh. L), PP. 31-34). Prior to Eisenbath's arrival at the Shelter, Bolden was advised by law enforcement personnel that: (A) Madsen was a resident of the Shelter; (B) an active warrant existed for Madsen's arrest related to charges for felony auto theft brought in Montgomery County, Missouri; and (C) a police officer would be coming to the Shelter to arrest Madsen pursuant to the warrant. (Id., ¶ 16, citing Exh. L, PP. 29-31; Exh. H, PP. 17-19). Bolden thus knew at the time of Eisenbath's arrival that he was the police officer dispatched to arrest Madsen. (Id., ¶¶ 17, 18, citing Exh. L, PP. 33-36; Expert Report of Richard J. Simpher (Exh. M), P. 1).

According to Bolden, she then walked downstairs to the basement to awaken Madsen. (Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts ("Plaintiff's Facts"), ¶ 22, citing Defendant's Exh. L, P. 36).[1] Shortly after Bolden walked downstairs, Officer Grant A. Jansen ("Jansen") arrived at the Shelter, to provide back-up for Eisenbath. (Defendant's Facts, ¶ 26, citing Exh. H, P. 23; Exh. M, P. 4; Exh. N, P. 6). While standing at the top of the stairwell, Eisenbath could hear Bolden speaking with Madsen at the bottom of the stairs, but could not understand the content of their conversation. (Id., ¶ 27, citing Exh. H, P. 23).

Upon concluding her verbal exchange with Madsen, Bolden walked back upstairs alone. (Defendant's Facts, ¶ 28, citing Exh. H, P. 25; Exh. L, PP. 54-56). When Eisenbath inquired as to

---

[1] Eisenbath alleges that prior to going downstairs, Bolden informed him there was no doorway on the lower level through which Madsen could escape. (Defendant's Facts, ¶ 23, citing Exh. H, PP. 21-22). Plaintiff denies this assertion. (Plaintiff's Facts, ¶ 23, citing Defendant's Exh. L, P. 57).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the whereabouts of Madsen, Bolden indicated Eisenbath and Jansen would have to wait while Madsen gathered his belongings. (Id., ¶¶ 29, 30, citing Exh. H, P. 27).[2] At this point, Eisenbath asked Bolden whether there was a door through which Madsen could escape on the lower level. (Id., ¶ 31, citing Exh. H, P. 28).[3] Bolden responded that there was a door on the lower level, but it was virtually inoperable. (Id., citing Exh. H, P. 28; Exh. J; Exh. L, PP. 59-61; Exh. M, P. 2; see also Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memo in Opp."), P. 3)).

Upon learning of the lower level door, Eisenbath proceeded toward the stairwell, and informed Bolden he wanted to go downstairs to arrest Madsen. (Defendant's Facts, ¶ 32, citing Exh. H, P. 28; Exh. L, P. 60).[4] Plaintiff alleges she refused to permit Eisenbath access to the basement, because she had been told by her supervisors that police officers must show a warrant before proceeding downstairs to the living quarters. (Plaintiff's Memo in Opp., PP. 3-4). Eisenbath then physically removed Bolden from the doorway to the stairwell,[5] and ran down the stairs to locate and arrest Madsen. (Defendant's Facts, ¶ 37, citing Exh. H, P. 29; Exh. J). Thereafter, Eisenbath and Jansen took Madsen into custody and arrested him without incident. (Id., ¶ 38, citing Exh. H, PP. 29-30).

After placing Madsen in the patrol car, Eisenbath and Jansen walked back into the Shelter and

---

[2] Eisenbath asserts Bolden became "increasingly rude and arrogant" during this exchange; Bolden denies this assertion. (Defendant's Facts, ¶ 30 and Plaintiff's response thereto).

[3] As indicated above, Eisenbath maintains this was the second time he posed this question.

[4] The parties dispute whether Bolden was already standing in the doorway during this exchange, or whether in response to Eisenbath's statement, she "darted in front of the narrow doorway and physically blocked Eisenbath's access to the downstairs area." (Defendant's Facts, ¶¶ 32-36 and Plaintiff's response thereto).

[5] According to Bolden, Eisenbath "threw her into the wall" before proceeding downstairs after Madsen. (Plaintiff's Memo in Opp., P. 4).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

located Bolden in her office. (Defendant's Facts, ¶ 39, citing Exh. H, P. 30). According to Bolden, she had returned to her office in order to call Eisenbath's supervisor. (Plaintiff's Memo in Opp., P. 4, citing Defendant's Exh. L, PP. 70, 75). Upon locating Bolden, Eisenbath proceeded to place her under arrest. (Defendant's Facts, ¶ 40).[6]

Bolden filed her Amended Complaint in this matter on August 13, 2004. (Doc. No. 9). In her Amended Complaint, Bolden alleges she suffered humiliation, disgrace, and mental anguish, when she was falsely arrested by Police Officer Eisenbath. (Amended Compl., ¶ 5). Bolden further maintains the false arrest violated her constitutional rights[7], as it was effected, "without a warrant, without probable cause, and circumstances surrounding the arrest would not lead a reasonable person to believe that a crime had been committed." (Id., ¶ 7). Bolden continues to assert she suffered damages due to Eisenbath's actions, including damage to reputation, damage to earning capacity, and mental anguish. (Id., ¶ 10).

As stated above, Defendant filed the instant Motion for Summary Judgment on July 6, 2005. (Doc. No. 26). In his motion, Defendant maintains he is entitled to summary judgment on Plaintiff's claims, either based on the doctrine of qualified immunity, or because it is undisputed that Bolden cannot establish the existence of an appreciable psychological injury. (Id.).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[6] According to Eisenbath, Bolden was arrested for interfering with a police officer during an arrest. (Defendant's Facts, ¶ 40, citing Exh. H, PP. 31-33; Exh. J; Exh. L, P. 79). Bolden conversely maintains the arrest was in retaliation for her reporting Eisenbath's inappropriate behavior to his supervisor. (Plaintiff's Memo in Opp., P. 4).

[7] Specifically, Bolden alleges Eisenbath's actions violated her rights under Amendments 4 and 14 to the United States Constitution. (Amended Compl., ¶ 9).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

**DISCUSSION**

**I.     Appreciable Psychological Injury**

In his first argument in favor of summary judgment, Eisenbath asserts he is entitled to judgment as a matter of law because "sophisticated injuries," such as mental and psychological impediments, require proof of causation by expert testimony. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Defendant's Memo in Support"), P. 7). Eisenbath thus maintains that because Bolden failed to appoint a medical expert by the Case Management Order

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

deadline of May 1, 2005, and further received no medical treatment for her alleged injuries at any time after June 16, 2003, as a matter of law she cannot prove she suffered a mental injury. (Id., P. 8).

Upon consideration, the Court finds that in a recent opinion, the Eighth Circuit rejected Defendant's position as follows: "Compensatory damages for emotional distress must be supported by competent evidence of a genuine injury, *and a plaintiff's own testimony can carry this burden.*" Rowe v. Hussmann Corp., 381 F.3d 775, 783 (8th Cir. 2004) (internal quotations and citation omitted) (emphasis added). See also Kucia v. Southeast Arkansas Community Action Corp., 284 F.3d 944, 947 (8th Cir. 2002) (internal quotations and citation omitted) ("A plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard"). The Court thus finds Plaintiff's own testimony as to her emotional damage may be sufficient to support her claim of injury, and so this portion of Defendant's motion must be denied.

## II.  Qualified Immunity

In his Motion for Summary Judgment, Defendant Eisenbath next alleges that he is entitled to qualified immunity. The defense of qualified immunity shields state officials performing discretionary functions from liability for civil damages, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted).

When assessing a claim for qualified immunity, a court must first determine whether, "the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). If the plaintiff has not asserted the violation of a constitutional right, the court must dismiss the suit. Cross v. City of Des Moines, 965 F.2d 629, 632 (8th Cir. 1992). If the plaintiff has asserted such a violation, the court must then determine whether the constitutional right at issue was "clearly established." Id., citing Siegert, 500 U.S. at 232. For

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

As stated above, in her Amended Complaint Plaintiff alleges she was falsely arrested by Police Officer Eisenbath, and that the false arrest violated her rights under Amendments 4 and 14 to the United States Constitution. (Amended Compl., ¶¶ 5, 9). Upon consideration, the Court finds that with her allegations of a warrantless arrest, without probable cause, Plaintiff has successfully asserted the violation of a clearly established constitutional right, sufficient to withstand summary judgment. See, e.g., Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.), cert. denied, 519 U.S. 1011 (1996) ("Second, Habiger had a clearly established right under the Fourth Amendment not to be arrested unless there was probable cause for his arrest"); Sartin v. Commissioner of Public Safety of State of Minn., 535 F.2d 430, 434 (8th Cir. 1976) (same).

Further, upon review of the record, the Court finds a genuine issue of material fact remains with respect to whether Defendant Eisenbath had probable cause to arrest Bolden. Specifically, while Eisenbath maintains Bolden clearly interfered with a police officer making an arrest by (1) forbidding Eisenbath from apprehending Madsen on the lower level of the Shelter, (2) lying to Eisenbath about the existence of a lower level door Madsen could use to escape, and (3) physically blocking Eisenbath's access to the lower level, Bolden denies all these allegations. (See Defendant's Memo in Support, P. 12; Plaintiff's Memo in Opp., PP. 13-16). The Court thus finds the question of whether Eisenbath's actions were objectively reasonable involves factual determinations best left to a jury. Defendant's Motion for Summary Judgment on this point will therefore be denied.

### III. Injury To Reputation and Future Earning Capacity

In his Motion for Summary Judgment, Eisenbath finally asserts he is entitled to summary

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

judgment on Plaintiff's damages claims for injury to reputation and lost future earning capacity. Upon consideration, the Court will grant Eisenbath's request with respect to lost future earning capacity, as Plaintiff offers no evidence she suffered such an impairment. The Court will deny Eisenbath's request with respect to Bolden's claimed injury to reputation, however, as an issue of material fact remains as to such alleged damage.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 26) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's damages claim for lost future earning capacity.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **DENIED** in all other respects.

Dated this <u>11th</u> day of October, 2005.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com